**IN THE UNITED STATE DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT BECKLEY**

**BARBARA BURDETTE, INDIVIDUALLY**
**AND AS ADMINISTRATRIX**
**OF ESTATE OF JUSTIN GRANT,**

       **Plaintiff,**

**v.**                              **Civil Action No.** 5:26-cv-00314

**D.P. DILLON, individually in**
**his capacity as a police officer employed**
**by the West Virginia State Police;  and**
**J.C. MANN, individually in his capacity as**
**a police officer employed by the West Virginia**
**State Police;**

       **Defendants.**

### COMPLAINT

This action is brought by Barbara Burdette, individually and as Administratrix of the Estate of Justin Grant under 42 U.S.C. §1983 and the laws of the State of West Virginia, to hold Corporal D.P. Dillon and Corporal J.C. Mann of the West Virginia State Police accountable for the unreasonable, unlawful, and malicious violations of the rights guaranteed to her son, Justin Grant, by federal and state laws and the Fourth Amendment to the United States Constitution, and for negligence under West Virginia law.

On Monday, May 6, 2024, Justin Grant died as a result of the constitutional violations detailed below by Corporal D.P. Dillon and Corporal J.C. Mann following a call about a "suspicious man" brandishing a deadly weapon in Fairlea, Greenbrier County, West Virginia. Justin Grant was a son, father, brother, uncle, and loyal friend. As a result of the unnecessary shooting of Justin Grant, Freedom of Information Act requests were made to the West Virginia

State Police for information and body camera footage. However, the body camera videos and information requested has not been furnished as of the time of filing of this Complaint. The Pocahantas County Prosecuting Attorney has permitted the family to view body camera video from Officer Mann who arrived on the scene after Officer Dillon had already pulled a weapon on Justin. The family was not permitted to view Officer Dillon's body camera video footage or any dash camera videos. Initially, the West Virginia State Police denied the FOIA requests stating that there was an ongoing investigation. However, it is the family's understanding that the investigation has since been closed, yet the requested information has still not been provided. This refusal has left Justin's family, friends, and the community with serious questions regarding the death of Justin Grant. Barbara Burdette, the mother of Justin Grant and the Administratrix of his Estate, now turns to this Honorable Court in pursuit of justice, and states as follows:

### PARTIES

1. Plaintiff, Barbara Burdette, is a resident of Greenbrier County, West Virginia. By Letter of Appointment dated May 4, 2026, the Fiduciary Supervisor of Greenbrier County, West Virginia, appointed Barbara Burdette as the Administratrix of the Estate of Justin Grant, her son. *See* attached Exhibit 1, Appointment of Administrator.

2. At all times relevant hereto, Defendant D.P. Dillon (hereinafter "Dillon") was an employee and trooper of the West Virginia State Police ("WVSP") acting within the scope of his employment with the WVSP and acting under color of law.

3. At all times relevant herein, Defendant J.C. Mann (hereinafter, "Mann") was an employee and trooper of the WVSP acting within the scope of his employment with the WVSP and acting under color of law.

4.  Defendants Dillon and Mann are being sued herein in their individual capacities as West Virginia State Troopers and police officers acting under color of law.

**JURISDICTION AND VENUE**

5.  This Complaint seeks remedies pursuant to 42 U.S.C. §§1983 and 1988, alleging violations of the Fourth Amendment  to the Constitution of the United States of America, as well as the laws of the State of West Virginia.

6.  Jurisdiction is conferred upon the United States District Court by Title 28, United States Code §1331, 1343, and 1367, providing original district court jurisdiction over cases presenting federal questions and seeking damages and other remedies under West Virginia state law and federal law, specifically pursuant to the provisions of 42 U.S.C. §1983 and §1988.

7.  Jurisdiction over state law claims is conferred upon this Court by 28 U.S.C. § 1367, which provides for supplemental jurisdiction over state law claims which are so related to the Federal Law claims that they form one case or controversy for Article III purposes.

8.  Venue in this district is proper pursuant to 28 U.S.C. §1391 because all parties are located in the Southern District of West Virginia and the actions giving rise to this civil action occurred within the territorial boundaries of this District.

**FACTS**

9.  This Complaint arises out of an encounter between Justin Grant ("Justin") and West Virginia State Police officers in the area of Fairlea, Greenbrier County, West Virginia. At the time of the incident, Justin Grant was a resident of Lewisburg, West Virginia, and was 44 years old.

10. On the afternoon of May 6, 2024, Troopers of the West Virginia State Police, including Defendants Dillon and Mann ("Defendant Officers"), responded to a call about a "suspicious man" brandishing a weapon in the area of Fairlea, Greenbrier County, West Virginia.

11. Upon information and belief, Justin Grant walked across the overgrown field between the rear of the residence he shared with Plaintiff and the camping fields of the West Virginia fairgrounds to meet his girlfriend so they could take her dog for a walk.

12. Upon information and belief, Defendant Dillon was the first officer on the scene and he immediately started yelling at Justin and pointed a taser at Justin which he later deployed.

13. Upon information and belief Defendant Officer Mann arrived on the scene, Justin Grant was leaning into the driver's side rear door.  Upon information and belief, Officer Dillon did not get close to Justin Grant or the vehicle as evidenced by the entirety of the vehicle being observed in the only body camera video that the family was permitted to view.

14. Upon information and belief, Justin Grant was not in close proximity to Officer Dillon as is evidenced by Officer Dillon being heard but not seen on the limited video the family was permitted to observe.

15. Upon information and belief, Justin returned to an upright standing position and walked to the trunk area of the car on the driver's side of the car belonging to his girlfriend, Lindsay Jones.

16. Upon information and belief, Justin Grant was shirtless, and holding his tee shirt and a small garden sickle in his hand. A sickle is an agricultural hand tool primarily used for trimming and cutting grass and other vegetation.

17. Upon information and belief, Justin Grant did not display or use the garden sickle in a threatening manner toward any person at any point according to the limited video the family was permitted to view.

18. Ms. Jones was seated in her vehicle where she remained with her dog.

19. Upon information and belief, Ms. Jones identified herself to Defendant Officers as the girlfriend of Justin Grant and stated that she was there to pick him up.

4

20. Upon information and belief, Defendant Dillon dismissed Ms. Jones and made no effort to utilize her as a resource to communicate with Justin Grant.

21. Upon information and belief, Justin Grant did not pose a threat of serious physical harm to either of the Defendant Officers or anyone else.

22. Upon information and belief, at no time did Justin Grant actively resist arrest or attempt to evade arrest by flight.

23. Upon information and belief, there was no indication of a crime being committed.

24. Upon information and belief, as Justin Grant walked from the driver side trunk area towards the passenger side trunk area, Defendant Dillon approached Justin.

25. Upon information and belief, Justin Grant extended his hands out from his sides and stated, something to the effect of "I did not do anything".  Further, throughout the video, Justin appears confused as to why the police are pointing guns at him as he was only meeting his girlfriend to walk her dog.

26. Upon information and belief, Defendant Dillon, who was standing several feet in front of Justin Grant, utilized his taser and shot Justin Grant with a taser barb, injuring him.

27. Upon information and belief, Justin Grant then appeared confused and attempted to distance himself from Defendant Dillon and get inside the vehicle. At all times, Ms. Jones was in the driver's seat of the vehicle, and upon information and belief, Justin Grant could not have operated the vehicle or used it in an attempt to flee or injure the officers.

28. Upon information and belief, Defendant Dillon then fired multiple gun shots at Justin Grant after previously utilizing the taser, and after Justin turned away to distance himself from Defendant Dillon.

29. Upon information and belief, the initial taser barbs and/or gunshots from Defendant Dillon's firearm struck Justin Grant, injured him, and caused him to stumble forward. As Justin

5

fell, he reached toward the rear passenger door handle on the passenger side of the vehicle, either to steady himself or to attempt to enter the vehicle. Further, upon information and belief, at no time did Justin use the garden sickle, charge at either of the Defendant Officers, or otherwise threaten physical harm to them.

30. Upon information and belief, Justin Grant did not resist arrest or attempt to evade arrest.

31. Upon information and belief, Justin Grant was wounded, had turned away from Defendant Dillon and offered no resistance, did not physically threaten him or endanger others.

32. Upon information and belief, when Justin Grant was in this compromised, wounded, and non-threatening position, Defendant Dillon advanced toward Justin and fired additional shots directly into Justin's person at close range.

33. Upon information and belief, at no time prior to the use of the taser or firearm did Justin Grant make any aggressive movement toward any officer; did not pose an immediate threat to the officers; and did not make any kind of threatening movement with the garden sickle held in his hand.

34. Upon information and belief, the conduct of Justin Grant did not demonstrate that he intended to use the garden sickle in a way that imminently threatened the safety of the Defendant Officers or another person.

35. Upon information and belief, based on the limited body camera video the family was allowed to review from Defendant Mann's body camera, Justin Grant was never in close proximity to either Defendant nor did Justin ever attempt to move closer to Defendant Officers such that he would pose a threat to them.

36. No reasonable officer would think that shooting Justin Grant in these circumstances was proportionate to the minimal resistance Justin Grant may have made by attempting to get inside the vehicle.

37. Upon information and belief, after Justin Grant fell to the ground, Defendant Dillon approached and handcuffed him as he lay wounded and motionless; used his leg to push the hand sickle away from Justin Grant; and then rolled Justin over and attempted to position him upright.

38. Upon information and belief, Justin's eyes were fixed and open when he was rolled over by Defendant Dillon. Justin showed no signs of consciousness.

39. Upon information and belief, Defendant Mann left the immediate scene to retrieve his patrol vehicle and a first-aid kit.

40. Upon information and belief, when Defendant Mann returned to the scene, he attempted to stop Justin's bleeding by applying gauze to his wounds.

41. Greenbrier County Emergency Medical Services (EMS) arrived at the scene and attempted to render aid to Justin Grant.

42. Greenbrier EMS transported Justin Grant to Greenbrier Valley Medical Center, where physicians pronounced him dead upon arrival. Justin Grant was 44 years old.

43. Upon information and belief, the entire incident, from the time of dispatch to Justin Grant being declared dead at the hospital, took approximately fifty minutes.

44. Justin Grant died as a result of the gunshot wounds. *See* attached Exhibit 2, Death Certificate.

45. Upon information and belief, the brevity of this timeline, considered alongside the absence of any meaningful de-escalation attempts, demonstrates that Defendant Officers failed to take reasonable steps to resolve the encounter without the use of deadly force.

46. At no time during the encounter did Defendant Officers attempt to de-escalate the situation. Defendant Officers did not attempt to speak with Justin Grant in a calm manner, did not engage Ms. Jones as a source to communicate with Justin, did not create time and distance, did not

7

summon crisis intervention or mental health resources, and did not employ any less-lethal alternatives before resorting to deadly force.

47. The use of force by Defendant Officers was neither justified, lawful, nor reasonable under the circumstances in this case. Justin Grant did not pose an imminent threat of death or serious bodily injury to any officer or other person at the time deadly force was used.

48. Upon information and belief, Justin Grant was not actively resisting arrest, nor was he attempting to flee in a manner that posed a threat of serious harm to others. The severity of any suspected offense did not justify the use of deadly force.

49. The acts and omissions of the Defendant Officers were intentional, reckless, wanton, and/or willful, conscience-shocking, and deliberately represent an indifference to Justin's constitutional rights.

50.  Upon information and belief, Defendant Dillon's stated justification for the initial shots was that he was protecting Defendant Mann. However, Defendant Mann was positioned several feet away from Justin, had his own firearm drawn, and was fully capable of defending himself if Justin had moved toward him. Upon information and belief, Justin Grant did not move toward Defendant Mann.

51. Defendant Officers failed to summon or await backup, crisis intervention teams, mental health professionals, or any other resources that could have assisted in resolving the encounter peacefully.

52. Defendant Officers' collective failure to attempt any de-escalation was a direct and proximate cause of death of Justin Grant.

**COUNT I**
**42  U.S.C. §1983 - Excessive Force**
**(Against Defendants Dillon and Mann)**

53. Plaintiff realleges and incorporates all previous paragraphs and allegations of this Complaint, to the extent relevant, as if fully and separately set forth herein.

54. At all times relevant herein, Defendant Officers Dillon and Mann acted under color of state law and within the scope of their law enforcement duties as troopers and police officers employed by the West Virginia State Police.

55. Pursuant to the provisions of 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws shall be liable to the party injured in an action at law.

56. As a citizen of the United States of America Justin Grant had a clearly established right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure and excessive force.

57. The Fourth Amendment right to be free from deadly or excessive force is clearly established by controlling authority and a robust consensus of cases of persuasive authority. *Bryer v. Painter,* No. 25-1058, 2026 U.S. App. LEXIS 10976*; 2026 LX 113037; 2026 WL 1042754 (4ᵗʰ Cir. April 17, 2026).

58. The use of deadly force is reasonably only when a suspect poses a threat of serious physical harm to police officers or to others. *Tennessee v. Garner,* 471 U.S. 1 (1985).

59. As of May 6, 2024, the law was clearly established that it is unreasonable for an officer to use deadly force against a suspect accused of a serious, but non-violent crime, who possessed a deadly weapon in plain view and disregarded several commands to drop the weapon, but did not

make any threatening or furtive movements with the weapon towards the officers or others. *Bryer v. Painter,* No. 25-1058, 2026 U.S. App. LEXIS 10976*; 2026 LX 113037; 2026 WL 1042754 (4th Cir. April 17, 2026).

60. A suspect does not pose an immediate threat justifying the use of deadly force when the suspect merely possessed, or was suspected of possessing a weapon and did not obey commands given by officers at the scene.

61. A police officer does not possess the unfettered authority to shoot a member of the public simply because that person is carrying a weapon. *Cooper v. Sheehan,* 735 F.3d 153, 150 (4th Cir.)

62. Justin Grant never made any movement suggesting that he intended to use the garden sickle in his hand or to throw it at Defendant Officers.

63. Justin Grant did not advance threateningly towards the Defendant Officers but rather attempted to distance himself from them by getting into a passenger seat of Ms. Jones' motor vehicle.

64. After Defendant Dillon fired a taser at Justin Grant and shot him several times, Justin Grant continued to back away and try to get inside the vehicle. He was not in a position to throw the garden sickle at the officers, to charge at them, or to otherwise physically threaten them. Justin Grant was not an immediate threat to Defendant Officers or any other person.

65. The actions of Justin Grant did not constitute a dangerous chase or active resistance to arrest.

66. The multiple shots that hit Justin Grant as he attempted to get into the car caused his death at a time when he posed no immediate threat to Defendant Officers or others and his actions did not justify the use of deadly force.

67. By using deadly force against Justin Grant under the circumstances alleged herein, Defendant Officers deprived Justin of his right to be free from unreasonable seizure and excessive force, as guaranteed by the Fourth Amendment to the United States Constitution, made actionable against state actors through the Fourteenth Amendment, and by Article III, §§ 6 and 10 of the West Virginia Constitution.

68. Under the objective reasonableness standard established by the United States Supreme Court in *Graham v. Connor*, 490 U.S. 386 (1989), and *Tennessee v. Garner*, 471 U.S. 1 (1985), the use of deadly force by Defendant Dillon was objectively unreasonable. Justin Grant did not pose an imminent threat of death or serious bodily injury to any officer or other person; any crime suspected was not of such severity as to justify deadly force; and Justin Grant was not actively resisting arrest or attempting to flee in a manner that posed a serious risk of harm to others.

69. The totality of the circumstances, including the events leading up to the shooting, the failure to de-escalate, the failure to use less-lethal alternatives, and the firing of additional shots into Justin Grant's person while he was already wounded and falling, demonstrate that Defendants' use of force was excessive and unreasonable. See *Barnes v. Felix*, 605 U.S. 73 (2025) (holding that the totality-of-the-circumstances inquiry in excessive force cases "has no time limit" and courts must consider all relevant circumstances including events leading up to the use of force).

70. Defendant Dillon's firing of multiple additional shots directly into Justin Grant's body at close range, while Justin Grant was already impaled with a taser, shot several times, wounded, stumbling, and falling to the ground, was particularly unreasonable and constituted excessive deadly force prohibited by the Fourth Amendment.

71. The actions of Defendant Officers were taken with a clear risk to the life, liberty and safety of Justin Grant and was so outrageous as to shock the conscience.

11

72. The actions of Defendant Officers were not taken in good faith and were unnecessary, unreasonable, unlawful and unjustified. They further violated the Constitutional rights guaranteed to Justin Grant, federal and state laws, internal policies and procedures, and other clearly established laws.

73. Defendant Officers knew or should have known that their actions constituted excessive and unreasonable deadly force as prohibited by the Fourth Amendment, which is clearly established law. The actions of Defendant Officers constituted deliberate indifference to clearly established laws and to the life and safety of Justin Grant.

74. As a proximate and legal result of the conduct of the Defendant Officers, Justin Grant suffered physical injury, conscious pain and suffering, humiliation, and death.

75. As a direct and proximate result of the actions of Defendant Officers Plaintiff, individually and as Administratrix of the Estate of Justin Grant, has incurred general and special damages for the deprivation of Justin Grant's Constitutional rights, including medical bills, funeral bills, loss of income, loss of services, severe emotional distress, mental anguish, loss of companionship and services, loss of enjoyment of life, and other such costs and expenses..

76. Defendants acted in reckless and callous disregard for the Constitutional rights of Justin Grant, and with willful oppression and malice. Plaintiffs therefore seek an award of punitive damages against these Defendants to the fullest extent permitted by law. *See Morning v. Dillon Cty.,* No.: 4:1 5-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072 at *12 (D.S.C. June 12, 2018); *Smith v. Wade*, 461 U.S. 30 (1983).

77. Pursuant to the provisions of 42 U.S.C. §1988, Plaintiff is entitled to an award of attorneys' fees and costs as part of his claim under 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays for relief as set forth below.

**COURT II**
**Bystander Liability Under 42 U.S.C. §1983**
**(Against Defendant Mann)**

78. Plaintiff realleges and incorporate all previous paragraphs and allegations of this Complaint, to the extent relevant, as if fully and separately set forth herein.

79. Pursuant to the provisions of 42 U.S.C. § 1983, every person who, under color of any statute, ordinance, regulation, custom, or usage of any State subjects, or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges, or immunities secured by the United States Constitution and laws shall be liable to the party injured in an action at law.

80. As a citizen of the United States of America Justin Grant had a clearly established right under the Fourth Amendment to the United States Constitution to be free from unreasonable seizure and excessive force.

81. At all times relevant to the allegations in this Complaint, Defendant Mann was acting under color of law and within the scope of his duties as a trooper and police officer employed by the West Virginia State Police.

82. A law enforcement officer may be liable under 42 U.S.C. §1983 on a theory of bystander liability if he or she (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has reasonable opportunity to prevent the harm; and (3) chooses not to act. *Randall v. Prince George's Cty., Md.,* 302 F.3d 188, 203 (4th Cir. 2002).

83. Under clearly established law in the Fourth Circuit, law enforcement officers have an affirmative duty to intervene to prevent fellow officers from using excessive force when they are present, aware of the excessive force, and have a reasonable opportunity to intervene. See *Stevenson v. City of Seat Pleasant*, 743 F.3d 411 (4th Cir. 2014).

84. Upon information and belief, the West Virginia State Police maintains policies and procedures regarding arrests, the use of tasers, the use of excessive or deadly force, and the protection of the Constitutional rights of arrestees.

85. At all times relevant hereto Defendant Mann knew or should have known about the clearly established laws that pertained to Justin Grant and protected him from the use of excessive or deadly force and, ultimately, his death.

86. At all times relevant herein, Defendant Mann was present at or near the scene of the shooting of Justin Grant and was aware that Defendant Dillon was using excessive and unreasonable deadly force against Justin.

87. Defendant Mann was positioned several feet from Justin with his firearm drawn and had a clear view of the encounter between Defendant Dillon and Justin. Defendant Mann observed Defendant Dillon pursue Justin with his firearm drawn, observed Justin display a non-threatening posture, and observed Defendant Dillon shoot Justin with a taser, then fired multiple gun shots into Justin's body, including additional shots into Justin's person while he was already wounded and falling.

88. Defendant Mann knew or should have known that Defendant Dillon engaged in unnecessary and unwarranted excessive and deadly force that presented a danger to Justin Grant, violated clearly established rights ensured to him by clearly established laws, including the Constitutions of the United States, the State of West Virginia, internal policies and procedures of the West Virginia State Police, and other applicable federal and state laws.

89. Defendant Mann had a reasonable opportunity to intervene to prevent Defendant Dillon from using excessive force against Justin Grant.  Defendant Mann chose not to act and failed to take any action to stop, prevent, or limit the use of excessive deadly force, all of which resulted in

14

violations of the Constitutional rights and privileges of Justin Grant; violations of federal and state laws and internal policies and procedures and, ultimately, caused him to suffer a horrible and tragic loss of liberty and life.

90. The failure of Defendant Mann to intervene was a proximate cause of Justin's injuries and death.

91. As a direct and proximate result of the actions of Defendant Officers Plaintiff, individually and as Administratrix of the Estate of Justin Grant, has incurred general and special damages for the deprivation of Justin Grant's Constitutional rights, including medical bills, funeral bills, loss of income, loss of services, severe emotional distress, mental anguish, loss of companionship and services, loss of enjoyment of life, and other such costs and expenses.

92. Defendants acted in reckless and callous disregard for the Constitutional rights of Justin Grant, and with willful oppression and malice. Plaintiffs therefore seek an award of punitive damages against these Defendants to the fullest extent permitted by law. *See Morning v. Dillon Cty.,* No.: 4:1 5-cv-03349-RBH-TER, 2018 U.S. Dist. LEXIS 163072 at *12 (D.S.C. June 12, 2018); *Smith v. Wade*, 461 U.S. 30 (1983).

93. Pursuant to the provisions of 42 U.S.C. §1988, Plaintiff is entitled to an award of attorneys' fees and costs as part of his claim under 42 U.S.C. §1983.

**WHEREFORE**, Plaintiff prays for relief as set forth below.

## COUNT III
## NEGLIGENCE
### (Against Defendants Dillon and Mann)

94. Plaintiff realleges and incorporates all previous paragraphs and allegations of this Complaint, to the extent relevant, as if fully and separately set forth herein.

15

95. This claim is brought pursuant to *W. Va. Code* §§ 55-7-5 and 55-7-6, which provide that whenever the death of a person is caused by wrongful act, neglect, or default, an action for damages may be brought by the personal representative of the deceased.

96. Defendant Officers Dillon and Mann, at all times alleged herein were acting within the scope of their employment as Troopers and police officers of the West Virginia State Police.

97. As a citizen of the United States of America Justin Grant had a clearly established right under the Fourth Amendment to the United States Constitution and the West Virginia Constitution to be free from unreasonable seizure and excessive force.

98. Upon information and belief, the West Virginia State Police maintains policies and procedures regarding arrests, the use of excessive and deadly force, de-escalation techniques, less-lethal alternatives, the rendering of medical assistance, and the duty to intervene to prevent improper conduct by other officers, including the use of excessive or deadly force.

99. Defendants Dillon and Mann knew or should have known of the clearly established laws, noted hereinabove, that precluded the use of excessive or deadly force against a person who posed no immediate threat to the officers or others.

100. A reasonable, well-trained law enforcement officer should recognize that the continued use of excessive or deadly force upon an arrestee who was not resisting arrest, fleeing, or making any aggressive movement towards any officer, and had been wounded by a taser and several gun shots was unjustified and highly likely to result in further serious injury or death.

101. There were no extraordinary circumstances present when the Defendant Officers improperly engaged in unreasonable excessive and deadly force against Justin Grant.

102. Defendants Dillon and Mann owed Justin Grant a duty of care, including the duty to use only such force as was objectively reasonable under the circumstances; the duty to employ

16

de-escalation techniques before resorting to the use of force; the duty to use less-lethal alternatives when available and appropriate; and the duty to render timely medical aid following the use of excessive and deadly force

103.    Defendant Mann owed Justin Grant a duty of care to intervene to prevent the use of excessive and deadly force by fellow officers.

104.    Defendants breached their duties of care by, among other things: (a) using deadly force against Justin Grant when he did not pose an imminent threat of death or serious bodily injury; (b) firing additional shots into Justin's body while he was already wounded, stumbling, and falling as a result of being tasered and shot; (c) failing to attempt any de-escalation or crisis intervention techniques; (d) failing to employ less-lethal alternatives; (e) failing to intervene to prevent the use of excessive and deadly force; and (f) failing to render timely and adequate medical assistance.

105.    Defendant Mann breached his duty of care by failing to intervene to prevent the use of excessive and deadly force by Defendant Dillon.

106.    Defendants negligently breached their duties of care by failing to take steps to preclude foreseeable risks of harm to arrestees such as Justin Grant through the actions and inactions as alleged herein.

107.    The actions of each of the Defendants herein constituted deliberate indifference to the constitutional rights of Justin Grant; a deliberate indifference to clearly established laws and his rights under state law; and a deliberate indifference to applicable internal policies and procedures, all of which constitute clearly established laws.

108.    As a direct and proximate result of Defendants' negligence and wrongful conduct, Justin Grant suffered severe physical injuries, conscious pain and suffering, and death.

109.     As a direct and proximate result of Defendants' negligence and wrongful conduct, Plaintiffs have suffered damages recoverable under *W. Va. Code* § 55-7-6, including but not limited to: (a) sorrow, mental anguish, and loss of solace, including society, companionship, comfort, guidance, kindly offices, and advice of Justin Grant; (b) loss of reasonably expected income of Justin Grant; (c) loss of services, protection, care, and assistance provided by Justin Grant; (d) expenses for the care, treatment, and hospitalization of Justin Grant incident to the injuries resulting in death; and (e) reasonable funeral and burial expenses.

110.     Defendant Officers are not entitled to qualified immunity under the *West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code* § 29-12A-5(b), because their conduct was undertaken with malicious purpose, in bad faith, or in a wanton or reckless manner.

111.     Defendants' conduct was reckless, wanton, willful, and malicious, warranting an award of punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

## **REQUEST FOR RELIEF**

**WHEREFORE**, the Plaintiff, by counsel, respectfully prays for and demands  a trial by jury on all issues so triable and for judgment against Defendants Dillon and Mann in an amount exceeding the minimum jurisdictional requirements of this Court, and in such sums as will fairly and fully compensate Plaintiff for her losses, injuries, and damages proximately caused by the wrongful conduct of Defendants, including, but not limited to:

1. For an award of compensatory and punitive damages for the Plaintiff against Defendants Dillon and Mann in amounts to be proven at trial, including and without limitations those damages permitted and available under all claims for excessive and deadly force made pursuant to 42 U.S.C. §1983;

2.  For an award of compensatory and punitive damages for the Plaintiff against Defendant Mann in amounts to be proven at trial, including and without limitations those damages permitted and available under all claims for bystander liability made pursuant to 42 U.S.C. §1983;

3.  All recoverable damages permitted by law for Plaintiff's claims of negligence against Defendants Dillon and Mann;

4.  General damages on all counts for loss of the life of Justin Grant;

5.  General damages on all counts for damages suffered by Plaintiff, including medical and funeral costs and bills, mental suffering, emotional distress, trauma, conscious pain and suffering, loss of future earning capacity, loss of companionship, mental anguish, past and future pain and suffering, and all other damages as allowed by law that have been suffered by the Plaintiff;

6.  Compensatory damages for all past and future damages including but not limited to economic losses and expenses incurred by the Plaintiff as a result of the Defendants' conduct;

7.  Damages in compensation for pain and suffering;

8.  Damages in compensation for loss of enjoyment of life;

9.  Any and all other allowable compensatory damages;

10. Punitive damages against the individual Defendant Officers sufficient to punish and deter the Defendants for their willful, wanton, reckless conduct, undertaken with conscious, reckless, and outrageous indifference to the health, safety, and welfare of Justin Grant and to deter such conduct in the future;

11. Pre- and post-judgement interest;

12. Costs incurred in this action and reasonable attorneys' fees under 42 U.S.C. § 1988, 42 U.S.C § 1983, and as authorized by state law and all other applicable legal authority;

13. Such other and further relief as may seem fair and just and that the interests of justice may require and that this Court deems just under the circumstances.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully Submitted,

**<u>Barbara Burdette, Plaintiff</u>**
**By Counsel**

<u>/s/ W. Jesse Forbes  (WVSB #9956)</u>
W. Jesse Forbes (WVSB #9965)
Jennifer N. Taylor (WVSB #4612)
Michael D. Heidenreich (WVSB #14255)
FORBES LAW OFFICES, PLLC
1118 Kanawha Blvd. East
Charleston, WV  25301
Telephone: 304.343.4050
Facsimile: 304.343.7450
wjforbes@Forbeslawwv.com
jtaylor@forbeslaw.com
mdh@forbeslaw.com

and

L. Danté diTrapano (WVSB #6778)
Charles F. Bellomy (WVSB #9117)
CALWELL LUCE DITRAPANO PLLC
Law and Arts Center West
500 Randolph Street
Charleston, WV  25302
Telephone: (304) 343-4323
Facsimile: (304) 344-3684
dditrapano@cldlaw.com
adavis@cldlaw.com
cbellomy@cldlaw.com

and

Larry Forman (KBA #95548)
(anticipated admission *pro hac vice*)
The Forman Building

1139 South Fourth Street
Louisville, KY 40203
Telephone: 502.931.6788
Facsimile: 419.5o74.7156
Larry@LarryFormanLaw.com
Communications@LarryFormanLaw.com

*Counsel for Plaintiff*